IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER DUERKSEN,

Plaintiff,

vs.                                                   Case No. 05-1135-JTM

CITY OF WICHITA, TED TRASK, MIKE
MENGES, and CHAD DUERKSEN,

Defendants.

MEMORANDUM AND ORDER

The plaintiff in the present action, Jennifer Duerksen, brings various federal claims against
the City of Wichita, two supervisors in the Wichita Fire Department, and her ex-husband firefighter.
The action arises from events relating to the break-up of the Duerksens' marriage and a physical
altercation which occurred at the Duerksen house on April 21, 2004.  Each of the defendants has
moved for summary judgment.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories,
and admissions on file, together with affidavits, if any, show there is no genuine issue as to any
material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.
56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light
most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.
1988).  The party moving for summary judgment must demonstrate its entitlement to summary
judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.
1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual
allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d
1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

**Findings of Fact**

Jennifer and Chad Duerksen were married June 1, 1996; three children were born of the marriage.

Michael Francis Menges has been an employee of the Wichita Fire Department since 1971, and has been a battalion chief in the operations division of the Wichita Fire Department since 1996. At no time has he ever had Chad Duerksen within his chain of command.  Menges has never discussed with defendant Chad Duerksen the incident underlying this litigation.

Chad Duerksen became a firefighter in 1999. He moved to Station 9 under the supervision of Captain Ted Trask and Captain James Martin in April, 2004.

Menges had one conversation with Jennifer before the domestic incident leading to arrests. At that time, Jennifer complained of verbal abuse and harassing phone calls. Chief Menges asked if she had obtained and presented the Wichita Fire Department with a restraining order directing some action on the part of the Wichita Fire Department. She said no, she had not. Menges told her

that he would talk to B shift's chief, Ted Trask, that he would have Chad counseled, and told her to follow up with Trask the next day.

Menges told Trask he should expect a call from Jennifer Duerksen regarding marital problems with Chad. However, Jennifer never spoke with Trask.  Between Jennifer's filing for divorce and the incident on April 21, Chad had only told Captain Martin of the filing, with no elaboration. Chad Duerksen did not ask Captain Martin to take any action as a result of this filing.

Trask did not discuss Jennifer's comments with Chad before the incident that led to Jennifer's arrest. Jennifer called the station to talk to Trask, but Chad answered the phone and would not put her through to Trask.

On the day Trask learned of the alleged problems, Chad was not working at the station, but rather was at the training grounds facility at a different location, learning operation of the aerial lift. He appeared at Station 9 only long enough to request from Captain Martin and be granted personal vacation leave ("PVL").

Jennifer and Chad separated on April 15, 2004.

On April 20, Chad went to the marital home, but Jennifer would not answer the door.  The divorce decree provided that Chad could not show up at the house without prior notice.  Jennifer called 911.  Chad left, and was questioned down the street by a police officer he did not know.  The officer told Chad not to return to the house.

On April 21, 2004 Chad Duerksen was at the drill tower training all day.  Chad called Jennifer repeatedly during the day.  According to Jennifer, she twice tried to call Captain Trask, but her calls were intercepted by Chad.  Eventually, Jennifer told Chad that he could have a few minutes to talk with her about the children if he would agree to stop calling.

He then came to the station and  asked Captain Martin for PVL to go home to speak to his wife. Captain Trask had no knowledge of this at the time.  Chad was off duty, on PVL when he went to his home to speak with his wife. He drove his own personal vehicle there.

The Wichita Fire Department has no control over the conduct of Chad Duerksen or any firefighter during off-duty time, including PVL time.

According to Jennifer, Chad grabbed her and told her how sorry he was. She "got the broom in the closet, and I kept telling him to leave, just leave, and he would not leave, and so I pushed him off me." (Jennifer Duerksen dep. at 46). Chad continued to grab her from behind and "that's when we got into a scuffle" during which Jennifer was struck in the mouth by a fist or elbow. (Id. at 47-48). Jennifer said she was calling the police department. She testified that when she said this, Chad ran outside and she did not see him again before the police arrrived.

Chad called Captain Martin to tell him he had been set up, and would probably be arrested and unable to return to work. Captain Martin asked if he wanted him to come over. Chad said something like, "I don't know, I guess." (Chad Duerksen Depo. at p. 17.) Captain Martin went to Duerksen's home because he was concerned about Chad's welfare. Martin was responsible for filling Chad's position on shift if he was not returning to work that day.

Jennifer testified that two or three police cars arrived with five or six officers. According to Chad, two police cars arrived, with one officer in each.

Chad Duerksen did not know any of the police officers.

Captain Martin arrived shortly after the police. He came in a fire truck, with the two firefighters necessary to operate the truck. At some point Martin and the two firefighters stood in the street or in the Duerksen yard.

Martin took the fire truck and firefighters to keep the truck available for emergency response. The fire truck was parked a couple of houses north of the Duerksen house on the east side of the street, headed out for a possible emergency call.

At some point, Jennifer Duerksen's attorney, Jennifer Wagle, arrived at the scene. Wagle said it was not right for so many police officers and firefighters to be there. All the firefighters and most of the police officers left shortly after Wagle arrived.

According to Jennifer Duerksen, her lips were red, swollen, and bleeding because of the blows she received from defendant Duerksen.  Both Duerksen and Wagle stress that Chad Duerksen did not have any marks on him.

Both Chad and Jennifer were arrested, booked, and taken to jail.  Jennifer Wagle contacted the Municipal Court Judge to request that he waive plaintiff's four-hour waiting period in jail.  The plaintiff alleges that someone from the fire department had already contacted the Municipal Court Judge to ask him not to waive her waiting period, and also told the judge that Jennifer Duerksen had been calling the fire station repeatedly that day and the day before.

After she was arrested and booked, Jennifer spent 20 minutes in a holding cell.  She was then seated for two hours in "the pit," an open area across from the desk of the detention officers.  There was a television in "the pit" area.

When Jennifer Duerksen went to Municipal Court, she did not even have an opportunity to appear in a court room with a judge. Attorney Steve Wagle told her that the case was dismissed and that no charges were being filed. No further explanation was given.  She did not even get to plead not guilty.

Captain Trask learned of the arrest of Chad by a radio call from Captain Martin who was at the scene. Martin and Trask discussed the need to replace Chad for the remainder of his shift.  Trask told Martin that he and his men were to stay away and not get involved. Trask did not approve or condone Martin's actions to take the fire truck and men to Chad Duerksen's neighborhood. Martin took that action on his own, without consulting Trask.

Captain Martin has no experience with any other instance of a firefighter calling due to a potential arrest.

When Martin confirmed that Chad Duerksen was being taken to jail, his position for the balance of his shift was filled by another firefighter. Later that day, Trask counseled Captain Martin on the importance of not becoming involved in a firefighter's personal problems.

Jennifer alleges that on April 28, 2004, Chad followed her to a McDonald's restaurant. She reported to the Wichita Police Department that defendant Duerksen had violated the Protection from Abuse Order. A police report was made, but no action was taken.

At the time of the incident, Duerksen was off duty and in his personal vehicle. No fire or police officials knew of his activity at that time.

On July 2, 2004, Jennifer Duerksen wrote a letter to Wichita Police Department Chief Williams and Fire Chief Garcia, complaining of alleged discrimination and harassment, but did not receive a response.

Plaintiff also stresses an incident in September 2004, in which several Wichita firefighters, including a Lieutenant Scholfield, chanted defendant Chad Duerksen's name and proceeded to laugh and giggle at her.

On October 26, 2004, a Wichita Fire Department vehicle from Squad 14 (defendant Duerksen's squad) drove up and down the street past the home of the parents of one of plaintiff's male friends.

It is uncontroverted that Chad Duerksen has not had any discussion with any fire department or police department official on how they should treat Jennifer Duerksen.

It is uncontroverted that neither Menges nor Trask ever spoke to a municipal judge or a prosecutor about Chad or Jennifer Duerksen for any reason.


**Conclusions of Law**

The defendant City argues that summary judgment is appropriate as to the named defendants because the plaintiff has failed to show standing in that she has failed to show any actions by the defendants causing her injuries and has not suffered any injury to any legally protected interest. Plaintiff argues that she had standing and has set forth a proper claim under § 1983. She stresses that it was "out of the ordinary" for the fire truck to appear at the scene of the domestic incident, that the appearance of the firefighters caused her "intimidation, stress, and humiliation of any already

6

difficult circumstance," and that she has been otherwise "taunted, harassed, and intimidated." (Resp. at 12).

The court finds that summary judgment is appropriate. The plaintiff has failed to show that the named defendants caused her any injury. Essentially the case revolves around a single incident, that occurring on April 21, 2004.[1] Reviewing the uncontroverted evidence as to that incident, the court finds that plaintiff has failed to show any City defendant caused her any injury to a protected interest. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (discussing elements of standing).

Chief Menges is not a supervisor of Chad Duerksen. He spoke only once with plaintiff, told her he would call Captain Trask to tell him to counsel Chad, and urged her to call Trask. Menges did call Trask, and told him that Jennifer would contact him with further details. Menges otherwise has no knowledge of any of the events in this litigation.

Captain Trask began to supervise Chad Duerksen only a few days before the April 21 incident, after Chad transferred to Station 9. Trask has never spoken with Jennifer Duerksen. Trask knew nothing of the use of the fire truck on April 21. When he learned firefighters were at the scene, he directed Captain Martin not to become involved in the situation.

---

[1] The other events alleged by plaintiff do not constitute admissible evidence of misconduct by the named defendants. The incident at McDonald's involved Chad Duerksen acting off-duty, in his civilian car. The City and the other named defendants had no knowledge of the incident. At some point more than six months after the Duerksens' separation and the incident at the house, some firefighters — none of whom are defendants herein — saw plaintiff and chanted her ex-husband's name. This was a brief and single incident which was not repeated. And, again many months after the incidents in April of 2004, a fire truck was observed driving by the parents' house of one of the plaintiff's male friends. There is no evidence this was undertaken to intimidate plaintiff, no evidence indeed that this was in any way unusual, and no evidence that any defendant knew of or participated in the event. Finally, plaintiff cites the affidavit of Jennifer Wagle, her attorney, who states that she tried to contact a Municipal Court Judge to obtain a waiver of the standard jail period, but "[s]omeone from the fire department had already contacted the judge to ask him not to waive her waiting period." (Wagle, aff. at ¶ 6). As offered, the evidence is inadmissible. There is no evidence how Wagle acquired this information other than by hearsay. There is no evidence who submitted this alleged communication to the municipal court, whether they were indeed with the fire department, and, most importantly, whether they acted with the knowledge of any of the named defendants.

7

The City of Wichita has not been served with any restraining order directing that it control Chad Duerksen.

At the time of the April 21 incident, Chad Duerksen was off duty and arrived in his personal vehicle.

In sum, plaintiff has demonstrated that on one occasion, a single Wichita Fire Department truck arrived near her house while she was involved in a domestic dispute with her husband, an off-duty firefighter. The three firefighters in the truck responded after the husband told them he was about to be arrested. The firefighters had no contact with the plaintiff, and left the scene shortly after they arrived. Wichita police officers were also at the scene, having been summoned by the plaintiff. The officers arrested both plaintiff and her husband. The charges against the plaintiff were later dismissed.

The plaintiff has failed to show that any of the defendants acted under color of state law at the time of the April 21 incident. For purposes of determining whether a defendant has acted under "color of law," it is not sufficient to show that a defendant had an official position; there must be evidence that the defendant was "using the power granted by the state" to accomplish a given end. *Brown v. Chaffee*, 612 F.2d 497, 501 (10th Cir. 1979). There must be "'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995).

At the time of the April 21 incident, Chad Duerksen was off duty. Although the other firefighters who arrived at the scene were on duty and in an official vehicle, they never came in contact with or spoke to the plaintiff. They were on the scene only a short time, and left shortly after plaintiff's attorney arrived. The fire truck was parked several houses away from the plaintiff's house, to be able to respond in the event of an emergency. There is no evidence that the firefighters presented any credible or substantial threat or display of authority over the plaintiff. There is no evidence that plaintiff was intimidated from performing any particular action by the firefighters' presence.

8

Rather, according to her own testimony, after a brief "scuffle" with her husband, the plaintiff announced that she was calling the police, and her husband immediately "ran" outside and did not attempt to reenter the house. The plaintiff then telephoned the police. She also telephoned her attorney, who arrived shortly thereafter. The firefighters, who as noted earlier did not attempt to speak with the plaintiff, left immediately after the plaintiff's attorney arrived. Plaintiff has failed to show the existence of evidence showing that the defendants' alleged actions were undertaken under color of state law.

The plaintiff concedes that under *Town of Castle Rock v. Gonzales*, ___ U.S. ____, 2005 WL 1499788 (June 27, 2005) she has no claim for the violation of her substantive or due process rights arising from the enforcement or non-enforcement of the restraining order.

The court further finds that plaintiff has failed to establish any basis for municipal liability against the City of Wichita. *See Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000). The plaintiff was arrested along with her husband after giving a statement to police officers at the scene which indicated mutual battery. None of the police officers involved in the arrest is named as a defendant. The plaintiff has failed to show that she suffered as a result of any custom or policy of the City, rather than, as the evidence establishes, the result of a single instance of alleged misconduct. *See Cannon v. City and County of Denver*, 998 F.2d 867, 877 (10th Cir. 1993).

Finally, summary judgment is appropriate as to plaintiff's claims of conspiracy under 42 U.S.C. § 1985. Plaintiff has failed to show the existence of any conspiracy, and has further failed to show the existence of any discriminatory animus, a requirement for such claims under § 1985. *Griffin v. Breckenridge*, 403 U.S. 88 (1971).

IT IS ACCORDINGLY ORDERED this 5th day of July, 2006 that the defendants' Motions for Summary Judgment (Dkt. Nos. 41, 43) are hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

9